Good morning, Your Honors. I am Douglas Whiteley, on behalf of the employees of the Legislature of New York. I'm with McNair. May it please the Court. Ms. McNair is accused in the District Court of denial of promotion for Supreme Court judgment and granting of defendant's resolution. There are three issues with this appeal. I would like to discuss today. The first is the applicability of the Fair Debt Collection Practices Act to the role and actions that the employees took in conjunction with the judicial foreclosure of Ms. McNair's home over alleged unpaid homeowner's association assessments and related fees and losses. The second issue is the employees' debt collection actions leading up to the judge's foreclosure, which took place in June 4, 2014. Specifically, the actions that took place in the one-year period prior to the complaint was filed after the Supreme Court complaint. The third issue is the applicability of the continuing violation doctrine and the discovery rule to the debt collector's actions outside of the one-year period before the filing of the complaint. This relationship, if you will, between the debt collectors and Ms. McNair spanned more than four years. All of these actions are related to the complaint. The first issue I'll get into is the foreclosure and the applicability of the FDCPA. I'll start this session with the case of Hope v. Peacock Trust, an opinion I know that Judge Kaczynski has authored. It was recently amended after a terrible incident, and I just realized that on Tuesday night, when we filed a quick notice of the amended agency proceeding opinion, my review of it is always the same. There was some rationale that was modified, but for purposes here, I think here on account of Kaczynski, I'll refer to the amended agency proceeding opinion. As stated in the amended appearance of the opinion, the TF trust sale is three actors. There's the lender, the borrower, and the trustee. And in that case, the trustee was the FDCPA defendant. The trustee's role in that case, though, was very limited. He did the bid to me. There was a trustee sale. I did the FDCPA. And that's all that it did here in this case at bar. There were four actors. There was a homeowners association, which is like the lender. There was the owner, Ms. McNair. It was like the borrower. There was the sheriff, who actually conducted the sale. Did he notice the sale, just an episode of the trustee sale? He conducted the sale. He collected the proceeds distributed via sheriff's department, just like a trustee gets a trustee's digital assignment. At what point were all of these people being involved in the proceedings? When are you saying all these actors were involved? These actors were involved in the foreclosure proceedings. And other than the sheriff, the three actors were also involved in the debt collection proceedings, leading up to the rate and the foreclosure. The fourth actor that you don't have in the whole case, that's the attorneys here. The Maxwell Morgan Law Firm and its lawyers. So their role here was not as the trustee. They're not the trustee here. The sheriff was the trustee. Maxwell Morgan was representative of the homeowners association, and was the provider of information to the sheriff. And so with that in mind, I think you need to look at the whole thing in O, which was very narrow. It basically just says trustee. Any kind of trust sale is not a debt collector for purposes of the FDCPA. But in the end, this paragraph was in the old and the new. It's in page 573 of the new opinion. First full paragraph. We do not hold that the FDCPA intended to execute all entities whose principal purpose is to enforce security interests. And entities that enforce security interests engage in activities that constitute debt collections. They are debt collectors. We hold only that the enforcement of a security interest is not always a debt collection. So Maxwell Morgan here, they did much more than simply foreclose. They didn't actually do the foreclosure. The sheriff did that. They provided information, misinformation, to the sheriff. The red, which was the communication to the sheriff, was a gross overstatement of the amount owed. It completely failed to acknowledge and account for all the payments that have been made in increasing the amount overall accounting that the sheriff might have owed. Maybe it was the red that was trying to collect a balance or was it trying to foreclose on the house or was it trying to enforce a security interest? The red is a tool to collect the amount owed.  It's a tool to direct the sheriff to sell the house to some third party and to then take those proceeds and pay the association. In an idea of trust situation, you have a lender paying out this large amnesty in debt, generally it would be maybe hundreds of thousands of dollars that they're saying that they're owed. Here, with these estimates, you have very much smaller amounts that are secured by a house that's maybe worth a couple hundred thousand dollars. It's just a tool to collect that amount owed. It's not something that's seen in 10 years. It's something that's moving forward. Why does it matter what the amount of the debt is? Isn't it just enforcing a security interest, though, in order to get whatever debt it is that you have? It is enforcing a security interest in order to collect the debt. But back to all Morgan's values here, their role was not exclusively limited to just enforcing a security interest. And I think what I'm... I saw you say we need to separate out the different parts of what you're challenging, but to me, I have trouble understanding how you can challenge any of the red because it seems like it falls under home. I haven't yet heard you say something that distinguishes it really from home. Okay, I think with the red, again, it is not... It is a tool that they're using in communication that they're providing this information, and this information is wrong. It's overstating amounts. And that is just part of their job in trying to collect the debt. They have been working this out for 40 years. If you deal with the state court, if they agreed with you that the amounts were wrong, would we be really demanding an issue that's been decided by the state court? No, Your Honor, because what we're seeing is that they made misrepresentations. You know, and we're challenging. But did the state court find that the amounts were appropriate? Well, the red itself is... It's something that the mental and organ lodges. It just issues a statement to the state court for issuance, for signature by the clerk. It doesn't actually even go in front of the judge. It's just issued by the clerk and then served up on the sheriff, who then does whatever the red says. Did you ever challenge the state court the amounts of fees or other things like that? Yes, Your Honor, there were challenges. We did try to stop the sheriff's sale. I believe the timing of it was that we had already issued it to the sheriff and then he didn't notice it. So the court rejected your arguments, correct? It's the court's fault. So how can we say the amounts were incorrect? Given that the state court has already ruled on that issue, wouldn't that be decent? Don't you have an issue preclusion problem? And how do we do it? Because what we've done here is we're just saying that there are misrepresentations on their practices. So what's an issue? We're not saying that the association was right or wrong. We're saying that the penalties and the pledges for the association made these misrepresentations. And in the written documents. In the written. I know you have exceptional misrepresentations, Your Honor. But in the written documents, I think you challenged those statements and the state court thought they were okay. And so I don't know how we can assume they're not okay for the purpose of your argument here. Well, in this claim preclusion issue, in Daniel Towns' issue, the pledges that was raised here, I mean, but I guess there was some challenge to the rent or to the foreclosure settlement. Was that challenge directed to the attorney's fees that were included in the rent provided to the sheriff to be sold,  So the question is, when you say you tried to stop the sheriff's sale, but the court declined your efforts, was there an assessment of the reasonableness of those attorney's fees that were asserted as in the rent? No, there was never an assessment of those fees. We did complain about those fees because in the rent, they added approximately $2,000 in fees and costs that were not authorized in the stipulation, and they just unilaterally determined that. We said that they don't get to choose that, but they never filed any sort of fee application or affidavit of support detailing what they did, and the subpoenary court never did any analysis of those fees, whether that $2,000 in fees and costs were reasonable. The subpoena never had a chance for that. They never provided that information. So we do contend that the $2,000 of fees and costs included in the rent, in addition to the prior fees and costs that were agreed to as part of the stipulation leading to the rent, that those $2,000 was unreasonable, and her obligation to pay is included as a reasonable fees and costs, and that changed between the certification and the affirmative decision. Did you notice any difference in your view of a judicial foreclosure and a non-judicial foreclosure? Since Ho was a non-judicial foreclosure, and was tracking 1692 F6, which applies to non-judicial actors, what's the difference of significance here, whether it's a judicial foreclosure, as this one was, versus a non-judicial foreclosure in Ho? I think that the difference is, the main difference is that you have this four-factor maximum that the appellees are collecting on behalf of the association and making assertions, in this case, overseeing an amount sum and asserting other amounts other than the $2,000 in fees and costs that are not reasonable and she shouldn't have to pay, whereas if a trustee still, the lender communicates directly to the trustee, who is a fiduciary to both the borrower and the lender, the trustee has duties to both of those parties. The sheriff does, too, but... So you can get efficiency in a judicial foreclosure, but you can't get efficiency in a judicial foreclosure? And that is part of the answer, and that's what we've got there. Part of the answer. It's in the brief. Also, is that an issue, is that there is no easy deficiency protection for these homeowners' association fees. In fact, in their superior court complaint, there are two causes of action, one for judicial foreclosure, a sentence for breaching a contract, a monetary judgment, in the event that you want to be able to collect all the money. I have a few minutes, so I can throw a statement. In the interim, I would like to say in the interim... Good morning, Your Honors. Mark Travis Campbell on behalf of the MLBs, and may it please the Court. Your Honors, there are only two timely claims here. The first is based on the attorneys who were included in the writ of execution, and the second is based on the alleged failure to promptly respond to the appellant's request for a balance statement. Let's talk about the first timely claim first. Poe controls the writ of execution, Your Honors. Poe made clear that the relevant inquiry is the act complained of, debt collection. In Poe, the Court stated that debt collection is seeking money from the person, but the foreclosure process is a completely different entity. That process is to sell property, the proceeds of which come from the seller, are used to then satisfy the obligation. So Poe made clear that if you look at the action, not the act or in the process. And I would just like to note that Poe directly affirmed the District Court of Oregon's decision in Holsby, Oakland. In Holsby, Oakland, the Court said, it's only one element of an FDCPA claim to be a debt collector, generally. You have to also engage in debt collection. In that decision, the Court said, the debt collector was entitled to summary judgment on allegations arising out of its conduct in seeking foreclosure, as distinguished from acts engaged in before the initiation of the foreclosure process. And Poe directly adopted that decision. So the relevant inquiry here is, was the writ of execution seeking selective collecting money from the appellant, or was it seeking to foreclose on property? And it's undisputed that the writ of execution only sought to foreclose. And therefore, it was not subject to the FDCPA. And I would just note that this Court's decision recently in Bashiri supports that conclusion, the conclusion of focusing on the conduct, not the role of the actor. In Bashiri v. Epstein, the conduct issue was a letter. In that letter, that letter sought money from the debtor. It also threatened a lien for foreclosure action if the debtor failed to pay. Again, Bashiri foretold that was collection because it sought the communication issue, the conduct issue. It sought money directly from the debtor. Here, the writ of execution seeking possible money just for foreclosure is not a relevant distinction. Well, it is a relevant distinction because I think... But we talked about the non-incurs aspect of it in the panel. Right? That's true. It was mentioned as a factor, right? That it's a factor. It's not just a person, but in relation to the person. Why doesn't that become a part of debt collection? Why do you try to collect debt? And if you don't collect it by foreclosing, you are letting it go back and trying to be able to collect it from the debtor. I understand. I think it's not a distinction, but it's a difference because in the judicial foreclosure, I think it's a distinction. I'm sorry. I'm probably mentioning it. No, Your Honor. I think because we're in the context of outreach involving homeowners' assessments, the amounts are so small that the sale of the property in any practical situation would never be able to satisfy the obligation. So it would seem that it wouldn't be necessary for the Arizona legislature to create an anti-deficiency statute in that scenario because here we're talking about a few thousand dollars or a billion dollars. So that's a different point. The point is there are different kinds of statutes. One of them is a primers procedure. It doesn't involve judicial supervision, and you know, it gives you the deal of collecting against the debtor. This is an alternative way of getting your money to go against the debtor or you go against the property. And you can use this kind of procedure when you introduce judicial foreclosure that you're really not giving up on the debt at all. What you're saying is I've only been trying to get as much money as I can from the property, but I'm still going to go after the debtor. It just seems like a different matter. Well, I think, Your Honor, it's important for folks to focus on how tiny a claim is only the writ of execution. It's not the judicial foreclosure complaint. It's not any other activity that went on in the attempts to collect. The only tiny claim is based on the writ, and the writ undoubtedly only seeks to foreclose on property. And therefore, it does not seek any device. Essentially, what's happening here is the association, through their attorneys, has abandoned attempts to collect from the debtor and has instead exercised its right to foreclose on the property in order to satisfy the proceed, in order to satisfy the obligation to have the proceeds of the sale. So if it goes against the property and finds out that it doesn't fetch as much as the sale, the property may actually go down, and the recovered amount is barely enough to cover the security debt, then the association would go to the rest of its heads against the debtor. Well, I don't know if I can speculate about that. But I think that here, if I could, well, what they're supposed to do with the amount, they couldn't. But what if you're wrong? Part of it's sale. That's it. If you don't get any chance of having the savings to go down bad, I don't know what you think about that. Well, I think that is certainly a possibility. I think in the context of a homeowners' association assessment, that is a completely improbable scenario given the value of property and the amount of the assessments. There's the question of how much property values are worth compared to the claims, right? Well, in this particular situation, we haven't had situations in the recent past where the actual property values are below the security interest rate. Well, I'm not aware of any examples where the failure to pay homeowner assessments amounted to more than a property value. I'm sorry? I just said I'm not aware of any examples where the failure to pay homeowner assessments, which are a few hundred dollars a quarter, ended up being a greater liability than the actual value of the property. It's not the actual value of the property. It's the actual value of the property minus whatever the legal trust, whatever's the first or second chance trust on you, right? But you also get to pay legal trust. When you have a sale, you can't, you know, you can't recover the security interest. Those things get paid off first. Oh, right, and in this situation with homeowner assessments, there is a first win, there is a support win on the connection with the sale, so the assessments are getting paid off first. But I think the court's point, though, was that you focus on the actions. The action of foreclosure is not seeking money from the person. It's seeking a sale on property. And I think the right of execution here, and how it dealt with between notices that were mailed directly to the debtor, that we're essentially saying, pay up or we're going to foreclose. Here we're talking about the actual device, the actual device that accomplished the foreclosure. I just thought I heard you say earlier that the rent, that putting aside the things before the essential limitations period, the writ itself, which is the time of the claim, that by pursuing the rent, they were abandoning other claims of debt from this homeowner. Somehow they didn't have enough money. Did you say that, and is that true? Well, I think it is true that they've decided, when they file the writ, that they're only going to seek foreclosure because that's the device they're going to use in order to satisfy the obligation. But once they do that, say, somehow, no one wants to buy this thing and they only get $10, can they still collect the rest of the assessment somehow else? I believe they could under Arizona law. So the writ, if there's nothing about filing a writ that gets rid of other debt, then forecloses the later effort? I'm not aware of any anti-efficiency statute concerning the lien, no. But in this particular situation, the writ was issued, you saw foreclosure, and then the obligation was satisfied, not foreclosing the foreclosure to the claimant versus the sale, excuse me. But, Your Honors, the claimants in the writ of execution failed for a second reason. The only timely claim in relation to the writ of execution is that the accurate inclusion of those judgment attorneys using the writ would somehow mislead material, mislead the least sophisticated debtor in the appellant situation. But that is the standard in the courts of law where it applies only to sophisticated debtors. Given knowledge of the account history, given knowledge of the prior communications that had gone on between the parties, here, the prior communication was a stipulation that the appellant signed to settle for debt for less than the amount owed. In that stipulation, it specifically stated that attorney's fees would continue to accrue if she did not make the necessary payments. She failed to do that, and then when the writ was filed, the post-judgment fees that accruing attorneys used were included in the writ. Now, the question is, would the least sophisticated debtor be materially misled by the inclusion of those fees? In other words, would the least sophisticated debtor be unable to intelligently choose her responses to the writ based on the appellant's misrepresentation? The answer is no. The responses to the writ were simple. There were three of them. What component of the amount listed in the writ as debt was attorney's fees? What's the difference here that might affect this hypothetical debtor? I think the amount of post-judgment attorney's fees was a little over $1,500, and the overall writ amount was several thousand, I believe $6,000, I'm not sure, $6,000 or more. It was a small figure. Your argument is, if she could pay it off, she'd pay it off, and the difference between it listing an amount of $4,500 and listing an amount of $6,000 wasn't going to make the difference. Well, I think the argument is twofold. Number one, the attorney's fees were inaccurate. Well, that's contested, right? So I'm not sure we can assume that. Well, it was contested at the state court level. She raised it in a motion to try to cancel the sale in her briefing. That was rejected. She raised it in a motion to try and stop, to try to build later. That happened, but at the time it was listed, I think their argument is, under Arizona law, I believe, you're not allowed to just say what you think the fees are. There has to be some other assessment, and you hadn't done that, and so at least for procedural purposes, it was false at that time. Well, Your Honor, I think that's her argument, but I think that's incorrect. I think they're taking issue with the way the attorney's fees were obtained. The attorney's fees themselves, there's no evidence in the record that any attorney's fees in there were not incurred, were not billed in pursuance of the stipulation. Now, under Arizona law, the bed and balloon cases dealt with this very issue and held that in the homeowner's assessment context, when the contract authorizes fees in connection with collecting assessments, that that includes post-judgment fees, and district courts in Arizona have repeatedly agreed with that. So, essentially, here is the question is, would including those modest amount of fees in the writ that was submitted and issued by the state court, without a materially misled police-adjudicated debtor, and the misadjudicated debtor's options were clear. She either doesn't respond and allows the writ to be executed, she contests the fees and files a motion, or she pays them. She chose the second option. She received two sets of attorneys who filed individual challenges to the writ itself. The only reasonable interpretation of the court's order for rejecting her challenges, which expressly lauded private attorneys whose issue is that the state court felt it found nothing wrong with this process. So... The state court meant that, like, though it was evaluating the fees as of then, making an evaluation of fees, it doesn't necessarily mean that retroactively it was appropriate to get some of them. I mean, you may have guessed correctly, but, like, if, I mean, he's saying you can't get some of them, they have to be assessed by a court, and if you have a response to that, are you saying, I think you did name a case, you think there's a case that says you can't get some of them? Well, I think you can... There was, like, first of all, I wouldn't describe it as a case. There was... The association had accrued attorney's fees based on the firm's record, and they were included in the writ. And there's several cases. The Fuels case on the Seventh Circuit, the Senior case on the Seventh Circuit, those cases involved letters, but it said simply identifying intercommunications with debtor what the attorney's fees are that are claimed to be owed. It's not a violation. It's arguably, it's a violation in terms of saying that because you're not being truthful. So, in this situation, it was a writ filed at the court that was challenged twice. And so, I think here, it's even a more compelling situation that the simple inclusion of attorney's fees that were accrued at that time, that the recently secured debtor would have known was coming because she signed a stipulation authorizing accruing fees, that would not materially mislead her head in this situation. The accruing fees part of this stipulation doesn't give her any way of knowing how much that is, right? At that point, no, Your Honor. And so, the only time that she ever knows how much that is is a bare-bones statement in the details of the writ given to the sheriff. That's when she was first learning the amount, yes. And then, you say that there was then a judicial assessment of the reasonableness of those fees as required under Arizona law? What there was was, Your Honor, there was a challenge to the fees, two challenges. My question is, was there a judicial assessment of the reasonableness of those fees with the process with which courts are very familiar? I think, Your Honor, did a court, did a state court come out and say, in response to an application for fees, that, yes, we approve of these? No, that didn't happen. What did happen was, there was challenges brought to the state court that included challenges to the fees that the only reasonable reading of those orders are that they were rejected. If they have been a problem, if the fees have been a problem, is the state court going to stop the sale? The state court was considering whether it would reject the efforts to stop the sale provided with something equivalent to tying the task records of the attorney so that it could inferentially be approving the reasonableness. Well, no, what it was, there were compelling broad arguments through counsel arguing that the inclusion of the post-judgment fees were simply unlawful and improper, and the court rejected that argument. So, Your Honors, if I could just start to say, the last timely claim here is based on the alleged failure to respond promptly to the appellant's request for a balance statement. And I would just note that there is no court to appeal these domains if ever held that there is a duty under the FDCPA to respond. In fact, there's nothing, period, top to bottom in the FDCPA, there is nothing in there requiring a debt collector or anyone to respond to any inquiry whatsoever. And I would even note in this court's decision in Guerrero in the RGM acquisitions, the court noted that the failure to respond to a debtor's request for verification in and of itself is not a violation. Thank you. Thank you. Regarding the association's right to recover the deficiency, paragraph 3 of the stipulated judgment was just the instrument that led to the right to specifically reserve that right to either, frankly, just pursue monetary judgment and just not foreclose, or in the event that foreclosure doesn't give them enough money, they get to collect the balance, and it's reserved. Were those three legal arguments you tied together, though? I mean, I think you have a tie, but it's probably the first one. So in case of the writ, does the writ incorporate the earlier one? The basis for the issuance of the writ is this stipulated judgment. It is the foreclosure judgment that authorizes the issuance of the writ. So the writ doesn't exist, it's not for the stipulated judgment, so these are linked together. And when they go to issue, get the writ issued, they're reviving this stipulated judgment, which reserves that deficiency. Regarding the communications or lack thereof, and then the months lead up to foreclosure, Ms. McNair, in May of 2013, made a $10,250 payment, over a total of $5,000. That's what's on her second payment plan. She introduced it in May of 2007 on another payment plan. But with that May payment, she included a letter, and she said, I believe this is everything I owe. If there is more, let me know. This is to the collector that she had been in communications with for four years. And I can tell you that anybody, at least a sophisticated consumer amount, if you've been in payback mode with somebody for four years, and you say, do I owe anything else, and that person doesn't respond to you for three months, it's not unreasonable to say, I guess I'm done. How is it possible that someone could have complimented the payments and thought that they were enough payments under this contract, though? I mean, maybe Sue should have. I don't have the number of my fingers, but if she had not paid the amount that she needed to pay, and also, how could she have complimented? You'd have to assume she can't calculate that, right? And I don't think you can. I've calculated it a number of times, but I've gotten 10, or 12, or 11 payments in $250. And the reason is, is it does not say you need to pay 12 payments in $250. It says you need to pay within one year period. You need to pay $2,500. They don't have to get to $5,500, and she had it. No, it doesn't say that she has to pay $5,500. It's E and S. Before the stipulation was entered, she offered to pay $5,500. But they didn't just say, yes, we'll take your offer. They gave her the stipulation and said, we'll do this. So her offer is this. It's a whole and separate little thing. Of course, you consider what she may have offered as an explanation for one thing. It's what the stipulation means. Because she did offer a foreclosure and a reduction of her redemption period. And things on her personal property. All of that centers the stipulation. That's a whole separate counteroffer. She accepted it. She signed it. But I don't think the court should. I think the court needs to stay within the four corners of that stipulation. And when you do that, it calls for this $2,500 payment, and then an additional $200, $50 payments, and George and John answer the $2,500. So again. So are you looking at this? Sorry. So SCR, can you show me what page in the record you're talking about? And maybe I'm looking at the wrong thing. But is SCR 1 the payment plan? Because it does say $5,500. Yes, ma'am. The stipulation. Where's the document that you think has the payment plan and doesn't have the 55,000 members? The record is in the stipulation. paragraph 7 of the stipulation. And what page of the record is the stipulation? ER 1. ER 1, page 7 is the specific page of the stipulation that this paragraph says. So it requires an initial payment of $2,500 on or before July 5, 2012, and continuing in the minimum amount of $250 per month to be received no later than the 15th of each month until the judgment is made in full. But there's no total judgment amounts here.  She made those payments. And it's arguable that possibly there was one more payment. I think it's hard to argue that there were two, but it's unclear. Because it does not specifically say she needs to pay $5,500 or she needs to pay $1,250 payments. So her current question, do I owe any more, is not unreasonable. And it's not unreasonable for her to say they didn't respond to me. They must not be claiming any more money. But, Sue, it says she has to do $250 per month for 12 months, and she'd only done 10 months, right? She did 10 payments. But when does the 12 months start? Well, you can't get to 12 even if you count the $2,500, which I don't think is a very reasonable reading. You can't get to 12, can you, in any other way than she owes at least one more payment? Well, if the first payment was due July 5 and no later than the 15th of each month or the year after, then, I mean, the first $250 payment would have been due in August. You could get August, December, October, November, December, January, February, March, April, and maybe that's it. So, I mean, that's, I think a very plausible reading of this. And this is confusing as far as anybody. You know, this person has been in this for a few years without what their obligations are, and she just ignored it. She asked, do I owe any more? If your question was ignored, it is not a reasonable saying. I must be damned. Okay, thank you. Please, I can't say so many more. Thank you so much for your service. Good luck on your exams.
judges: Kozinski, Friedland, Arterton